Dorothy M. PAZDERNIK, Janice N. Fanetti, Kris Ann Miriani & Cheri M. Treadway, Plaintiffs-Respondents

v.

Ernest M. DECKER, May E. Mitchell & Clarence Mitchell, Defendants-Appellants.

No. 45441.

Missouri Court of Appeals, Eastern District, Division Four.

May 17, 1983.

Mark D. Hirschfeld, Clayton, for defendants-appellants.

Clyde C. Farris, Clayton, for plaintiffs-respondents.

SMITH, Judge.

Defendants appeal from a judgment against them in a court-tried case holding a power of attorney void, ordering an accounting of funds obtained through use of the power, and establishing a construc-

tive trust on bank accounts comprising such funds. We affirm.

On July 30, 1979, Hallie Copeland, 77 years old was admitted to Deaconness Hospital in a "non-responsive" state. She had suffered a stroke. Pursuant to a power of attorney dated August 6, 1979, her brother, Ernest Decker, transferred certain bank accounts in the name of Mrs. Copeland and one or another of the plaintiffs as joint tenants to accounts in the name of Mrs. Copeland and himself or another of the defendants.[1] These transfers occurred between August 7 and August 21, 1979. Subsequently in October 1979, those accounts were transferred out of Hallie's name into the name of one or more of the defendants. Mrs. Copeland was discharged from Deaconness to Mount St. Rose Hospital on August 30, 1979, for rehabilitation. She was subsequently transferred to a nursing home where she died on December 15, 1979.

■ Defendants challenge the trial court finding that Hallie Copeland lacked the mental capacity to contract on August 6, and that the power of attorney was therefore void. Plaintiffs' evidence from four lay witnesses[2] was that during at least the first two weeks of her hospitalization Hallie was unable to communicate, failed to recognize her relatives, and spoke only in gibberish. The hospital records reflect that on August 3 the patient's "level of conc. improved, trying to speak;" that on August 6, "patient remained aphasic[3]—Hemiparesis [right side] remains rather complete;" that on August 7, the patient was "more alert but no other change;" that on August 17, "Pt. essen. unchanged. It does not appear that she will regain *any useful* function;" (emphasis in original); that on August 28, "[s]he had made considerable motor improvement but fluent aphasia unchanged." Admission note by a doctor at Mount St. Rose stated: "In general, this is an elderly lady who lies in bed, is really aphasic. She has jargon; she cannot communicate whatsoever. She cannot cooperate with the physical examination." Tests by a speech pathologist at Mount St. Rose on September 3 indicated Hallie had an overall aphasic impairment of 92 (100 being total impairment, 0 being no impairment) with total impairment in visual decoding skill and graphic skills and 78 and 93 impairment in auditory understanding and verbal skills respectively. The pathologist concluded that although Mrs. Copeland could vocalize words her ability to understand was severely impaired. After a month of daily therapy sessions, some improvement was noted but Mrs. Copeland remained moderately to severely impaired.

The signature on the power of attorney, although delineated an X mark in the statement of the witnesses attached thereto, is nothing but a single rambling line reminiscent of the first efforts of a small child. The witness statement states that Mrs. Copeland was unable to sign her name but "understood the explanation and wording of the foregoing instrument." That instrument was written in typical legal language. No witness to the execution of the power of attorney testified nor did the notary public who executed the jurat. Defendants presented no evidence other than reading certain portions of the hospital record. Nothing presented by defendants reflected that Mrs. Copeland had the mental capacity on August 6 to understand the nature of her acts or the significance of the document which she "signed." The evidence abundantly supports the trial court's finding that Mrs. Copeland lacked the mental capacity to execute the power of attorney and that it was therefore void. *Evans v. York,* 216 S.W.2d 124 (Mo.App.1948) [2].

Having concluded that the power of attorney was a nullity, it is unnecessary for us

---

1. Plaintiffs were a niece and grandnieces of Hallie. Defendants other than Decker were a sister and brother-in-law of Hallie.

2. Two of these witnesses were plaintiffs, one was the husband of a plaintiff, and the fourth was a cousin by marriage of a plaintiff.

3. Aphasia—the loss or impairment of the power to use words as symbols of ideas that results from a brain lesion. Webster's Third New International Dictionary 99 (1976).

to address defendant's contentions that the trial court erred in finding undue influence and breach of a fiduciary relationship. The sole basis for the transactions in dispute was the power of attorney. Without a valid power of attorney, the transactions lacked legal basis and the court had the equitable power to require an accounting and impose a constructive trust.

 Defendants also attack the admission into evidence of certain records from financial institutions on the basis that the witnesses identifying the documents were not the custodians and inadequately testified to the mode of preparation. The statute, Sec. 490.680 RSMo 1978, does not require only a "custodian" to identify the documents; it also allows another "qualified witness." The question of whether the witness is qualified is whether that witness has sufficient knowledge of the business operation and the methods of keeping records of the business to give the records probity. *Rossomanno v. Laclede Cab Company,* 328 S.W.2d 677 (Mo. banc 1959) [7–14]. Such a determination is largely within the discretion of the trial court. *Rossomanno v. Laclede Cab Company, supra; Thomas v. Fred Weber Contractor Inc.,* 498 S.W.2d 811 (Mo.App.1973) [1–3]. Both witnesses involved here met that test. The contention that the "mode of preparation" was inadequately described is not preserved for review as that ground was not specifically raised at the time the records were offered. A general objection of lack of foundation does not call to the court's attention the aspect of the foundation which is considered lacking. As such it is inadequate to preserve the matter for review. *State v. Jones,* 569 S.W.2d 15 (Mo.App.1978) [1, 2]; *State v. Simpson,* 625 S.W.2d 957 (Mo.App. 1981) [2]. The trial court expressly stated its satisfaction with the reliability and trustworthiness of these records, and our review of the testimony and the records gives us no reason to question that satisfaction.

Defendants' final point concerns the admissibility of a deposition of a doctor taken in a different but related lawsuit. The record does not establish whether the trial court admitted this exhibit or considered it. Even without it the record overwhelmingly supported the court's findings. Defendants have not supplied us with the deposition so we are in no position to assess its prejudicial effect if it was considered by the trial court and if that consideration was erroneous.

Judgment affirmed.

PUDLOWSKI, P.J., and KELLY, J., concur.