**REFRIGERATION INDUSTRIES, INC., Respondent,**

v.

**Tom A. NEMMERS, Appellant.**

No. WD47860.

Missouri Court of Appeals, Western District.

July 26, 1994.

Kirk R. Presley, Kansas City, for appellant.

Ronald C. Spradley, Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Tom Nemmers appeals the judgment entered on a jury verdict in favor of Refrigeration Industries and the order overruling his motion for judgment notwithstanding the verdict (judgment n.o.v.), or in the alternative, for a new trial. Mr. Nemmers claims that Refrigeration Industries failed to make a submissible case of fraud, misrepresentation and breach of contract. The judgment is affirmed.

In the fall of 1989, Refrigeration Industries, through its president and sole shareholder, Kent Spence, entered into discussions with Mr. Nemmers about the possibility of Mr. Nemmers joining Refrigeration Industries as an equipment salesman. Refrigeration Industries is engaged in the business of selling and servicing refrigeration and related types of equipment to various businesses including restaurants and convenience stores. Mr. Spence was interested in hiring Mr. Nemmers because he would be capable of bringing with him from his current employer, Smith St. John, a large customer base which would assist Refrigeration Industries in expanding the equipment sales portion of its business. Smith St. John sells restaurant and other food service equipment, including

the types of equipment sold by Refrigeration Industries.

On December 15, 1989, Mr. Spence met with Mr. Nemmers to discuss the possibility of Mr. Nemmers' employment with Refrigeration Industries. During this meeting, Mr. Spence asked Mr. Nemmers whether he was subject to a covenant not to compete at Smith St. John which would prevent him from bringing with him any customers that he had worked with at the company. Mr. Nemmers told Mr. Spence that he was not subject to such a covenant and indicated that he had a strong customer base that he would be able to bring with him to Refrigeration Industries. Refrigeration Industries was especially interested in three major customers with whom Mr. Nemmers had worked—Perkins Restaurants, Chi–Chi's Restaurants, and Rally's Hamburgers. Mr. Nemmers told Mr. Spence that "they were on the cutting edge of developing their stores and he was the key person involved with that at Smith St. John."

Mr. Nemmers was originally to begin work at Refrigeration Industries on February 12, 1990. However, on February 2, 1990, Mr. Nemmers contacted Mr. Spence and informed him that Smith St. John had offered to raise his salary if he would stay with the company. Mr. Nemmers told Mr. Spence that if he wished to hire him, he would need his salary increased to $75,000 per year as well as an "up front" opportunity to purchase stock in Refrigeration Industries. Mr. Spence agreed to raise Mr. Nemmers' starting salary but told him that he would need to discuss the stock purchase request with the company's counsel. Mr. Nemmers' starting date was moved to February 26, 1990.

On February 13, 1990, Mr. Nemmers' supervisors at Smith St. John asked him to sign a covenant not to compete which would specifically prohibit him from soliciting business from or contacting Perkins, Chi–Chi's and Rally's without the prior consent of Smith St. John. Mr. Nemmers agreed and signed the noncompetition agreement. He never notified Mr. Spence that he had executed the noncompetition agreement with Smith St. John. Mr. Spence later testified that had he known about the subsequent noncompetition agreement, "it would have changed the deal [and] may have completely killed the deal" between himself and Mr. Nemmers. Mr. Nemmers began working for Refrigeration Industries on February 26, 1990. He also signed a finalized noncompetition agreement on that day in favor of Refrigeration Industries. A stock purchase agreement was executed on March 22, 1990.

Mr. Nemmers was employed with Refrigeration Industries until November 15, 1990, when he voluntarily quit after a dispute over a service matter. In January 1991, Mr. Nemmers resumed his employment with Smith St. John. After his return to Smith St. John, Mr. Nemmers continued to sell restaurant equipment and supplies to various customers, including some of the companies that had been customers of Refrigeration Industries. On January 18, 1991, Refrigeration Industries brought suit against Mr. Nemmers seeking injunctive relief to enforce its covenant not to compete. Mr. Nemmers filed counterclaims alleging fraud, negligent misrepresentation, tortious interference with a business relationship, breach of fiduciary duty and wrongful discharge.[1]

A jury trial was held on February 8, 1993. The jury returned a verdict in favor of Refrigeration Industries for breach of contract and fraudulent misrepresentation, awarding damages in the amount of $25,680 on the breach of contract count and $16,875 in actual damages and $12,500 in punitive damages on the fraudulent misrepresentation count. The jury found against Mr. Nemmers on his counterclaim. He subsequently filed a motion for judgment n.o.v., or in the alternative, motion for new trial. On May 19, 1993, the trial court entered its judgment granting a permanent injunction in favor of Refrigeration Industries and overruling Mr. Nemmers' motion for judgment n.o.v. This appeal followed.

Mr. Nemmers presents six points on appeal. In his first point, he contends the trial court erred in overruling his motions for directed verdict and for judgment n.o.v. because Refrigeration Industries failed to make

---

1. Mr. Nemmers ultimately submitted only one claim for fraudulent misrepresentation.

a submissible case of fraudulent misrepresentation.

■ In reviewing the submissibility of a case, this court views the evidence in the light most favorable to the verdict. *Clayton Center Assoc. v. W.R. Grace & Co.*, 861 S.W.2d 686, 689[3] (Mo.App.1993). "[The] plaintiffs are entitled to the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* This court disregards the defendant's evidence except to the extent that it supports the plaintiff's case. *Id.*

■ In order to make a submissible case for fraudulent misrepresentation, the plaintiff must prove there was (1) a representation; (2) the representation was false; (3) the representation was material; (4) the speaker knew the representation was false, or he was ignorant of its truth or falsity; (5) the speaker intended his representation to be acted upon by the hearer in a manner reasonably contemplated; (6) the hearer was ignorant of the falsity of the representation; (7) the hearer relied on the truth of the representation; (8) the hearer had a right to rely on the speaker's truthfulness; and (9) there was incurred by the hearer consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

■ In this case, Refrigeration Industries submitted the following verdict-directing instruction:

## INSTRUCTION NO. 11

First, Tom Nemmers represented to Refrigeration Industries that he would be able to bring business from Perkins Restaurants, Chi–Chi's Restaurants and Rally's Hamburgers with him to Refrigeration Industries and that he had not signed a non-compete agreement with Smith St. John, intending that Refrigeration Industries rely upon such representations in asking Tom Nemmers to join Refrigeration Industries.

Second, Tom Nemmers then executed a non-compete agreement with Smith St. John precluding him from directly or indirectly soliciting or attempting to solicit business from or engaging in any contact with Perkins, Chi–Chi's and Rally's without Smith St. John's prior written consent.

Third, Tom Nemmers failed to disclose the existence of the non-compete agreement to Refrigeration Industries, and

Fourth, the representations were therefore false, and

Fifth, Tom Nemmers knew that they were false, and

Sixth, the representations were material to the decision of Refrigeration Industries to ask Tom Nemmers to join Refrigeration Industries, and

Seventh, Refrigeration Industries relied on the representations in asking Tom Nemmers to join Refrigeration Industries, and in so relying was using ordinary care,[2] and

Eighth, as a direct result of such representations Refrigeration Industries was damaged.

Mr. Nemmers challenges the submissibility of the fraudulent misrepresentation claim on five grounds, designated as subpoints (A) through (E). In subpoint (A), Mr. Nemmers claims that Refrigeration Industries failed to present evidence that the representations submitted in Instruction No. 11 were false statements. The record shows that on December 15, 1989, Mr. Nemmers told Mr. Spence that he did not have a noncompete agreement with Smith St. John. Mr. Nemmers also indicated that he would be able to bring Perkins, Chi–Chi's and Rally's business with him because he did not have a noncompete agreement with Smith St. John. Although these statements were true on December 15, 1989, they became false on February 13, 1990, when Mr. Nemmers executed a noncompete agreement with Smith St. John. Despite the fact that the Smith St. John agreement was signed before negotiations with Refrigeration Industries were finalized and before Mr. Nemmers had begun working for Refrigeration Industries, Mr.

**2.** The instruction defined "ordinary care" as the degree of care that would be reasonable in Re- frigeration Industries' situation.

Nemmers never mentioned its existence to Mr. Spence at any time prior to or during his employment with Refrigeration Industries. We find this evidence sufficient to establish that Mr. Nemmers' representations, albeit initially true, subsequently became false and that Mr. Nemmers failed to disclose the change of circumstances to Mr. Spence.

■ Under subpoint (B), Mr. Nemmers claims that Refrigeration Industries failed to prove that it relied on his representations. At trial, Mr. Spence testified that it was very important that Mr. Nemmers not be subject to a covenant not to compete with Smith St. John so that he would be able to bring with him to Refrigeration Industries a strong customer base which included Perkins, Chi–Chi's and Rally's. These factors were the primary incentive for asking Mr. Nemmers to join Refrigeration Industries. Mr. Spence testified that had he been notified that Mr. Nemmers had signed a noncompete agreement with Smith St. John, it would have substantially changed the deal between the parties.

The record clearly indicates that Mr. Spence relied on the representations made by Mr. Nemmers on December 15, 1989 in determining whether to hire him. It is also evident that Mr. Spence continued to rely on those representations throughout the remainder of negotiations with Mr. Nemmers and until the finalization and execution of the noncompete agreement on February 26, 1990, and the stock purchase agreement on March 22, 1990. Accordingly, we find the evidence sufficient to establish reliance.

Under subpoint (C), Mr. Nemmers claims that Refrigeration Industries failed to prove that the representations were material. "[A] representation is material if it relates directly to the matter in controversy and is of such a nature that the ultimate result would not have followed if there had been no representation, or if the one who acted upon it had been aware of its falsity." *Carnahan v. American Family Mut. Ins. Co.,* 723 S.W.2d 612, 615 (Mo.App.1987) (quoting *Schoen v. Lange,* 256 S.W.2d 277, 281 (Mo.App.1953)). "It is not necessary that the representation

be the sole inducement to act; it is sufficient if the representation is a material factor in the decision to act." *Manufacturers American Bank v. Stamatis,* 719 S.W.2d 64, 70[9] (Mo.App.1986).

■ In this case, Mr. Spence testified that his reason for hiring Mr. Nemmers was that Mr. Nemmers could help expand Refrigeration Industries' equipment sales customer base. He also testified about the importance of Mr. Nemmers not being subject to a noncompete agreement with Smith St. John so that he would be free to bring major customers, i.e., Perkins, Chi–Chi's and Rally's with him to Refrigeration Industries. He further testified that had he known about the noncompete agreement with Smith St. John, it would have substantially changed the deal between him and Mr. Nemmers and "may have completely killed the deal." We find the evidence sufficient to establish that the representations made by Mr. Nemmers were material to Mr. Spence's decision to hire him.

Under subpoint (D), Mr. Nemmers claims that Refrigeration Industries failed to prove that it sustained any damages as a direct result of representations made by him. Specifically, Mr. Nemmers contends that the evidence was insufficient to show that the loss of profits alleged by Refrigeration Industries was causally related to Mr. Nemmers' misrepresentations.

■ In an action for fraudulent misrepresentation, "the plaintiff may recover for any injury which is the direct and natural consequence of plaintiff's acting on the faith of defendant's false representations." *Rogers v. Hickerson,* 716 S.W.2d 439, 446 (Mo. App.1986). The plaintiff may recover both general and special damages which have proximately resulted from the fraud, *id.,* including lost profits. *See, e.g., Hanes v. Twin Gable Farm, Inc.,* 714 S.W.2d 667, 669 (Mo. App.1986).

■ Refrigeration Industries asserts that it incurred damages as a result of Mr. Nemmers' failure to generate sales to Perkins and Chi–Chi's due to the noncompete agreement with Smith St. John.[3] As evidence of the

---

3. Refrigeration Industries did not claim any    damages as a result of lost profits with respect to

extent of damages incurred, Refrigeration Industries introduced Exhibit 62, which is a summarization of Smith St. John's sales to Perkins and Chi–Chi's from 1990 forward. Refrigeration Industries argues that had Mr. Nemmers been able to bring these customers with him, as he represented he could, and had he not been subject to a noncompete agreement with Smith St. John, Refrigeration Industries rather than Smith St. John would have been able to realize the profits from the sales set forth in Exhibit 62. There was also testimony by Mr. Spence explaining what the sales figures represented and how the lost profits for Refrigeration Industries were calculated. We find the evidence sufficient to establish that the lost profits incurred by Refrigeration Industries were a direct and natural consequence of its reliance on Mr. Nemmers' representations.

■ In his final subpoint, Mr. Nemmers claims that Refrigeration Industries failed to prove that he willfully concealed the existence of the Smith St. John noncompete agreement. The record shows that during their negotiations, Mr. Nemmers and Mr. Spence had discussed Mr. Nemmers' ability to bring with him to Refrigeration Industries the business of major customers, i.e., Perkins, Chi–Chi's and Rally's. The record also indicates that although Mr. Nemmers was aware that Mr. Spence was counting on his ability to bring with him the business of these restaurants to Refrigeration Industries, he subsequently executed a noncompete agreement with Smith St. John which specifically prohibited him from contacting those same customers without the consent of Smith St. John. The jury could reasonably infer from the facts that Mr. Nemmers knew that Mr. Spence would rely on his representations in deciding whether to hire him. Mr. Nemmers never notified Mr. Spence of the existence of the noncompete agreement with Smith St. John even though it was a material fact that would have substantially changed the deal between the parties. In view of this record, we find the evidence sufficient to establish that Mr. Nemmers willfully concealed the existence of Mr. Nemmers' noncompete agreement with Smith St. John. Point denied.

For his second point, Mr. Nemmers contends Refrigeration Industries' fraud claim was not submissible because Mr. Nemmers had no duty to disclose the existence of Smith St. John's noncompetition agreement since that information was equally available to Refrigeration Industries.

■ "Concealment of a material fact of a transaction which a party has a duty to disclose constitutes fraud as much as though affirmative representation is given." *Curtis v. Kays*, 670 S.W.2d 887, 893 (Mo.App.1984). Under Missouri law, a duty to disclose arises when the silent party possesses "superior knowledge ... [that is] not within the fair and reasonable reach of the other party...." *Id.* "The common law has long required that a person who has made a representation must correct that representation if it becomes false and if he knows people are relying on it." *Fischer v. Kletz*, 266 F.Supp. 180, 188 (S.D.N.Y.1967). The Restatement (Second) of Torts § 551(2)(c) (1977) provides that:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated ...
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; ....

In this case, Mr. Nemmers told Mr. Spence that he was not subject to a covenant not to compete with Smith St. John and would, therefore, be able to bring Perkins, Chi–Chi's and Rally's business with him. That representation was true at the time it was made on December 15, 1989. However, that representation became false on February 13, 1990, when Mr. Nemmers executed the noncompetition agreement in favor of Smith St. John which specifically prohibited him from soliciting the business of Perkins, Chi–Chi's and Rally's without the express consent of Smith St. John. Mr. Nemmers

Rally's Hamburgers because there were no reported sales to Rally's during the relevant period of time.

signed Smith St. John's noncompetition agreement less than two weeks after he had told Mr. Spence that he would need more money in addition to an "up front" stock purchase option before he would go to work for Refrigeration Industries. Although Mr. Nemmers knew that his previous representations to Mr. Spence were no longer true after February 13, 1990, he never notified Mr. Spence about the noncompete agreement with Smith St. John.

We believe that under these facts and circumstances, Mr. Nemmers had a duty to correct his previous representations by disclosing to Mr. Spence that he had signed a noncompete agreement with Smith St. John. Mr. Spence was relying on the original representations and would have no reason to believe that the circumstances had changed. At the time Mr. Nemmers signed the noncompete agreement in favor of Smith St. John, he was in a position of superior knowledge of material facts and should have advised Mr. Spence of the change in circumstances. Contrary to Mr. Nemmers' contention, Mr. Spence was under no obligation to pursue his own investigation in order to verify Mr. Nemmers' previously-made representations. *See Link v. Cox,* 529 S.W.2d 189, 191 (Mo.App.1975). Accordingly, this point is also denied.

For his third point, Mr. Nemmers contends Refrigeration Industries' claim for punitive damages was not submissible because there was no proof of evil motive or reckless indifference by Mr. Nemmers. Viewing the evidence in the light most favorable to the verdict, the jury could have found that Mr. Nemmers intentionally withheld the fact that he had signed a noncompete agreement with Smith St. John. Rather than disclose this material information to Mr. Spence, which he had a duty to do, Mr. Nemmers purposefully concealed the existence of the noncompete agreement so that he would be hired by Refrigeration Industries at a higher salary as well as receive an offer for an immediate ownership interest in the company. The jury could have reasonably inferred Mr. Nemmers' "evil motive" or "reckless indifference" to the rights of Refrigeration Industries when he purposefully

concealed material information for his own pecuniary gain and to the detriment of Refrigeration Industries. *See Moore v. Courtesy Chevrolet, Inc.,* 854 S.W.2d 13, 14 (Mo. App.1993). Accordingly, we find the evidence sufficient for submission of the punitive damages claim.

Mr. Nemmers next contends the trial court erred in admitting Exhibit 45 because Refrigeration Industries failed to lay a sufficient foundation. Exhibit 45 is a summary of sales made to customers of Refrigeration Industries by Mr. Nemmers after he left the company. We note initially that Mr. Nemmers did not properly preserve this issue for appellate review. In order to preserve an issue for review, an objection to evidence must be "sufficiently clear and definite" so that the counsel has the opportunity to correct any error and the trial court can correctly rule on the objection. *Reed v. Director of Revenue,* 834 S.W.2d 834, 836–37 (Mo.App.1992). Because an objection must specifically state the grounds on which it is based, an objection of "lack of foundation" is ordinarily too general to warrant sustaining, *Mathis v. Glover,* 714 S.W.2d 222, 225 (Mo. App.1986), and preserves nothing for appellate review. *Pazdernik v. Decker,* 652 S.W.2d 319, 321 (Mo.App.1983). Even if this issue had been properly preserved, we are unable to conclude that the admission of Exhibit 45 was improper.

Substantial deference is accorded to the trial court's ruling as to the admissibility of evidence. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993). In order for a summary of records to be properly admitted into evidence, the summary must be based on records which are admissible and available to the opposing party for inspection. *Ahrens & McCarron, Inc. v. Mullenix Corp.,* 793 S.W.2d 534, 540 (Mo.App. 1990).

In this case, there was adequate evidence concerning the foundation for Exhibit 45. Testimony was presented by Mr. Spence with regard to how Refrigeration Industries had obtained the information used to prepare Exhibit 45. He indicated that several documents had been obtained from Smith St.

**920**

John and were used to compile the customer list and sales figures reflected in Exhibit 45. He also testified that the primary source of information for the figures reflected in Exhibit 45 came from commission detail reports obtained from Smith St. John. The record shows that the commission reports as well as several other foundational documents, i.e., account records, sales reports and invoices, were admitted into evidence without objection. In view of this record, we conclude that the trial court did not err in admitting Exhibit 45.

For his fifth point, Mr. Nemmers contends Refrigeration Industries failed to make a submissible case for breach of contract because there was no evidence that any damages were proximately caused by Mr. Nemmers' breach of the covenant not to compete.

■ While anticipated profits of a commercial business have historically been regarded as too remote and speculative to warrant recovery, they are recoverable if the plaintiff can prove with reasonable certainty that (1) the defendant's conduct caused some loss of profit; and (2) the extent of the loss. *Coonis v. Rogers,* 429 S.W.2d 709, 714 (Mo. 1968); *Coach House of Ward Parkway, Inc. v. Ward Parkway Shops,* 471 S.W.2d 464 (Mo.1971). In this setting, "loss of profits" refers to the amount of net profits that the plaintiff would have realized in the usual course of business if its clients had not been lost to the competitor as a result of the defendant's actions. *Mills v. Murray,* 472 S.W.2d 6, 16 (Mo.App.1971). While the plaintiff is required to prove with certainty the *fact* of damage, the same degree of certainty is not required with regard to the *amount* of damages. *Coach House,* 471 S.W.2d at 472–73. A breach of contract resulting in damages may not be excused simply because the damages may not be established with exact certainty. *Id.* at 473. All that is required by Missouri courts is that the amount of the estimated lost profits be supported by the best evidence available. *Id.* at 472–73.

In *Coach House,* the Missouri Supreme Court upheld opinion evidence regarding the plaintiff's lost profits which was based on a percentage of the competing company's sales figures. *Id.* at 473. In *Mills* damages for loss of anticipated profits resulting from the breach of a noncompetition agreement were determined by applying the plaintiff's net profit percentage to the sales made to plaintiff's customers by the covenanting employee's new employer during the restrictive time period. *Mills,* 472 S.W.2d at 14–15. In that case, the evidence of lost profits was derived from the plaintiff's books and records as well as from the records of the new employer and was accepted by the court as the "most reliable source of proof available to them." *Id.* at 16.

■ In this case, there is evidence to show that Refrigeration Industries sustained damages as a result of Mr. Nemmers' breach of the noncompete agreement. The record indicates that after leaving Refrigeration Industries and resuming work at Smith St. John, Mr. Nemmers made substantial sales to customers of Refrigeration Industries. The primary purpose for entering into the noncompete agreement with Refrigeration Industries was so that Mr. Nemmers would be restrained from diverting customer business and profiting from sales made to those customers to the disadvantage of Refrigeration Industries. The intentional solicitation of sales from customers of Refrigeration Industries during the restrictive time period constituted a clear violation of the noncompetition agreement to the detriment of Refrigeration Industries. Accordingly, we find the "fact" of damage to Refrigeration Industries as a result of Mr. Nemmers' breach of the noncompete agreement was sufficiently established.

■ With respect to the amount of damages, the record shows that the damages were based on the total equipment sales made by Mr. Nemmers to customers of Refrigeration Industries after he left Refrigeration Industries and resumed employment with Smith St. John. Using those sales figures, Refrigeration Industries applied its net profit percentage for equipment sales of five percent, which yielded $25,679.67 in profits that could have been realized by Refrigeration Industries if Mr. Nemmers had not breached the noncompete agreement.

Testimony was presented by Mr. Spence regarding how the sales figures were obtained and explaining the method used for calculating the figures. Financial records were also received into evidence. As previously noted, the only objection made to this evidence was a general "lack of foundation" which, ordinarily, would not warrant sustaining, *Glover,* 714 S.W.2d at 225, and generally preserves nothing for review. *Pazdernik,* 652 S.W.2d at 321. Based on this record, we find the evidence sufficient to establish the lost profits with reasonable certainty.

For his final point, Mr. Nemmers contends Refrigeration Industries failed to make a submissible case for breach of contract because it did not offer any proof of Mr. Nemmers' interference with customers in which it had a legitimate proprietary interest.

 A covenant not to compete "must serve a proper interest of the employer in protecting the good will of a business and must be reasonably limited in time and space." *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 74 (Mo. banc 1985). Under Missouri law, an employer has a protectable right in his customers and good will. *Id.* Where an employer has a legitimate proprietary interest in his customers and goodwill, a noncompete agreement will be enforced as to an employee with substantial customer contacts. *Id.*

In this case, the evidence demonstrated that Mr. Nemmers had substantial contacts with customers of Refrigeration Industries. At trial, Mr. Spence testified that the customers with whom Mr. Nemmers had substantial contacts were continuous and repeat customers of Refrigeration Industries during 1989 and 1990. The record also shows that after he left Refrigeration Industries, Mr. Nemmers returned to work at Smith St. John selling the same types of products that he had sold for Refrigeration Industries. The evidence further demonstrated that after Mr. Nemmers resumed employment at Smith St. John, he solicited business from customers of Refrigeration Industries. In view of this record, we find the evidence sufficient to establish that Refrigeration Industries had a protectable interest in its customer contacts and that Mr. Nemmers violated the noncompete agreement.

For the foregoing reasons, the judgment is affirmed.

All concur.