STATE of Missouri, Respondent,

v.

Byron EAST, Appellant.

No. WD 53637.

Missouri Court of Appeals, Western District.

June 30, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1998.

Application for Transfer Denied Oct. 20, 1998.

Kent Gipson, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

SPINDEN, Judge.

Byron East appeals the circuit court's judgment convicting him of second degree murder and armed criminal action for the August 5, 1995, shooting death of Emmanuel Whytus in St. Joseph. We affirm the judgment.

East shot Whytus when the two became embroiled in an argument. Before the shooting, East was walking away. He turned, pulled a gun out from his waistband, returned to grab Whytus' shirt and scuffled with him briefly. During the scuffle, two shots were fired, and Whytus fell to the ground. East ran to a nearby alley where he left the gun and the shirt he was wearing.

When police and paramedics found Whytus, he was dead. They did not find a weapon on Whytus' body. An autopsy indicated that Whytus died almost instantly when a bullet entered the back of his head and passed through his brain and brain stem.

In the first of the six points East raises in his appeal, he contends that the circuit court erred in not instructing the jury that it could find that East shot Whytus in self-defense. East's defense was that he shot Whytus accidentally, but he argues that a self-defense instruction would have been proper because self-defense and accident are not always mutually exclusive theories and was not in his case.

■ East's assertion of self-defense was inconsistent with his defense that he accidentally shot Whytus. Self-defense results from intentional, but necessary, conduct. An accident results from unintended conduct. We do not recognize a claim of accident occurring during self-defense. *State v. Houcks,* 954 S.W.2d 636, 638 (Mo.App.1997). A defendant may be entitled to inconsistent defenses, such as insanity and self-defense, but only if he establishes them by proper evidence. *State v. Morris,* 248 S.W.2d 847, 853 (Mo.1952). A defendant's uncorroborated testimony is not sufficient to support inconsistent defenses. *State v. Peal,* 463 S.W.2d 840, 842 (Mo.1971).

The state presented witnesses who saw East arguing with Whytus. They saw East walk away from Whytus, pull a gun from his pants' waistband, turn and walk back toward Whytus, grab Whytus by the shirt, and scuffle with him briefly before two shots were fired.

■ In light of this evidence, the circuit court properly rejected East's request for a self-defense instruction. East did not present substantial evidence to support it. The evidence established that East was walking away when he turned and, armed with a gun, escalated the struggle with Whytus. This contradicted any suggestion of self-defense. *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984), rehearing granted on other grounds, *State v. Chambers,* 891 S.W.2d 93 (Mo. banc 1994).

In his second point, East contends the circuit court erred in overruling his hearsay objection to the rebuttal testimony of Forest Hoff, dean of students at Missouri Western State College. Hoff's testimony rebutted East's explanation of why he was in St. Joseph. East had said, "I was invited to St. Joseph by the college scouts. They had came to Kansas City. They had came up to Penn Valley. They were aware of my graduating. They informed me that it would be a great opportunity to come here and attend Missouri Western." Hoff testified that individuals in the registrar's and admissions offices had found no records of East's applying for admission to the college or of college recruiters talking to East.

East contends that the circuit court's allowing Hoff's testimony "bore on the critical issue of [East's] credibility, which was the linchpin of [his] case." He also contends that the circuit court's permitting the state to use Hoff's testimony to argue that East lacked credibility violated East's constitutional rights.

■ Although East objected during trial to Hoff's testimony, he did not raise the issue in his motion for new trial. The only way we can review the issue, therefore, is to consider it as plain error under Rule 30.20. Under Rule 30.20, we do not have authority to review an issue as plain error unless we discern

facially substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted from an error. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). We do not discern substantial grounds for believing that the hearsay caused manifest injustice for three reasons: evidence of East's guilt was overwhelming, East was able to establish that someone from the college may have talked to him without making a record of it, and the jury saw a letter in which someone associated with the college communicated with East. We, therefore, decline review of the point.

In his third point, East contends that the circuit court erred in not granting his motion for a change of venue. He argues that the court was obligated to grant his request because the state was one day late, according to Rule 32.04, in denying his motion's averments and because he presented sufficient evidence of prejudice from trying the case in Buchanan County.

Rule 32.04(e) set the deadline for the state's filing its denial:

> The state, within ten days after the filing of the application for a change of venue, may file a denial of the existence of the reason or reasons alleged in the application. Such denial need not be verified. If a denial is filed, the court shall hear evidence and determine the issues. If the issues are determined in favor of the defendant, or if the truth of the grounds alleged is within the knowledge of the court, or if no denial is filed, a change of venue shall be ordered to some other county convenient to the parties and where the reason or reasons do not exist.

East contends that because the state did not file its denial within 10 days of his filing his application, the circuit court was obligated to grant his motion for change of venue.

The state responds by relying on Rule 20.01(b):

> When by these Rules ... an act is required ... to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon notice and motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]

East argues that Rule 20.01 does not apply to his case because the Supreme Court did not amend Rule 32.04 to refer to Rule 20.01 until after the circuit court ruled on his request for a change of venue.[1]

■ Rule 20.01 did apply to East's case. By its own terms, even before the 1996 amendment, it applied to "these [r]ules." Rule 1.01 explained that references to "[t]hese [r]ules" referred collectively to all of the Supreme Court's rules. This court's Eastern District applied Rule 20.01's provisions for deadline extensions to Rule 32.04(e) in *State v. Fults,* 719 S.W.2d 46, 49–50 (1986), 10 years before the Supreme Court's amendment.

East then argues that "the state unquestionably failed to meet the burden imposed by Rule 20.01(b) [to show that its late filing resulted from 'excusable neglect']." We have no basis for reaching this conclusion. East did not include a transcript of the circuit court's hearing to consider the motion. We do not know what evidence the state produced at that hearing.

■ Because East did not submit a complete record, we have no basis of knowing whether the state established excusable neglect at the hearing. East had the burden as the appellant to supply this court with a sufficient record to review this point, and his failure to do so requires that we deny his point. Rule 30.04(c); *State v. Brown,* 708 S.W.2d 140, 145 (Mo. banc 1986).

■ East alternatively argues that the circuit court erred in denying his motion for change of venue. We disagree. During *voir dire,* seven of the twelve jurors admitted that they had heard something about the case from media coverage, but they all said that they could disregard the reports and be fair and impartial in considering the evidence. East even admits that he "does not dispute that each juror was sincere in stating that

---

**1.** The Supreme Court amended Rule 32.04(e), effective January 1, 1996, to add: "The court may enlarge the time for filing a denial as provided in Rule 20.01(b)."

they would be fair and impartial," but he insists that the "psychological impact" of the media reports was unforgettable. The circuit court was in a better position than we to judge the jurors' credibility. *State v. Feltrop*, 803 S.W.2d 1, 6 (Mo. banc), cert. denied, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). We will disturb a circuit court's decision concerning a motion for change of venue only when we discern abuse of discretion and a real probability of injury to the complaining party. *Id.* We discern nothing to suggest that the circuit court abused its discretion in believing the jurors' assurances that they could put media reports out of their mind and judge East's case only on the basis of the evidence presented. We deny East's third point.

In his fourth point, East complains that the circuit court erred in admitting evidence that police found a knife in a car in which East was a passenger when he was arrested. East contends that the knife was irrelevant because the state did not link it to him or to the charged crime.

The state did not question the arresting officer about the knife or seek to introduce it until after East's cross-examination of the officer. During cross-examination, East asked the officer:

> Q. During this felony car stop, you brought each individual out of the car by himself and restrained him while the other [officer is] keeping control of the people that are still in the vehicle; would that be fair?
>
> A. That would be accurate.
>
> . . . .
>
> Q. Did you search [East]?
>
> A. I did an initial patdown of him for weapons.
>
> Q. You didn't find any weapons on his person, did you?
>
> A. Not on his actual body, no, I did not.
>
> Q. Did you find anything else of significance on his person?
>
> A. On his body, no.

The circuit court ruled that these questions "opened the door" to the state's asking about the knife because officers had found it in the backseat of the car where East had been riding. During redirect examination, the officer testified that he found the knife on the car's rear floorboard near where East had been sitting.

The Supreme Court has instructed, "[W]here the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Admission of such "curative evidence" rests in the sound discretion of the circuit court, and we will reverse the circuit court's decision only when the circuit court abuses its discretion. *State v. Fenton*, 941 S.W.2d 810, 813 (Mo.App. 1997).

East injected the issue of the knife's being in the car when he endeavored to suggest to the jury, through his cross-examination questions, that he was unarmed when he was arrested. This entitled the state to explain the circumstances surrounding his arrest, including the knife's being within East's easy reach. The court did not abuse its discretion in admitting the evidence. We deny East's fourth point.

In his fifth point, East contends that the circuit court erred in not declaring, *sua sponte*, a mistrial when the state asked the arresting officer whether East or any of the car's other occupants protested when he asked them to get out of the car. East contends that this amounted to improper evidence of his remaining silent after his arrest and violated his privilege against self-incrimination and right to due process. East complains about the arresting officer's testimony:

> Q. And at some point did you indicate to [the car's occupants] why you stopped them?
>
> A. Yes, I did. After we had everybody handcuffed and had the scene secured, I explained to them their vehicle[—]the description of their vehicle had been given out as being involved in a shooting in St. Joseph. And we explained to them and

they all just agreed. They didn't make any statements really.

Q. Nobody protested?

A. No, not at all.

Because East did not object, we can review the issue only if it constitutes plain error under Rule 30.20. The questions were not plain error; we do not perceive, from the face of the record, a substantial ground for believing that manifest injustice or a miscarriage of justice has resulted from the officer's testimony that East did not protest getting out of the car. It was merely testimony describing the circumstances surrounding the officer's "felony traffic stop." [2] Officers did not formally arrest East until after a witness identified him as the shooter. They waited until then to inform him of his basic constitutional rights. After officers had informed him of his rights and were taking him to St. Joseph, East answered several of their questions before invoking his right to silence. We decline review of his fifth point.

▮ In his sixth point, East contends that the circuit court erred by not interfering, *sua sponte*, with the state's closing argument. He complains that "the prosecutor repeatedly resorted to improper and inflammatory arguments which so infected the proceedings with prejudicial considerations that [his] rights to due process and an impartial jury were violated[.]" East asserts that the state argued facts not in evidence and mischaracterized evidence. He also complains that the state referred to him as a "liar," expressed a personal opinion about East's testimony, and referred to him as a person known to carry concealed weapons. East did not object to any of these comments, so we can grant relief only if these matters constituted plain error.

▮ Rarely should an appellate court grant relief on assertions of plain error in closing argument. *State v. Clemmons*, 753 S.W.2d 901, 907 (Mo. banc), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). "This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Id.* at 907–08. The Supreme Court has instructed:

> [T]he absence of an objection is fatal to the defendant's contention [that the circuit court should have intervened, *sua sponte*, when a prosecutor makes an improper argument]. Had objection been made the trial judge could have taken appropriate steps to make correction. The defendant was not necessarily entitled to a mistrial. The judge could consider the state of the evidence and the apparent effect on the jury and might conclude that it would be sufficient to sustain the objection and then caution the jury if requested. Defense counsel did not give him this chance.

*State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). We find no basis for plain error review of this point.[3]

We, therefore, affirm the circuit court's judgment.

HOWARD, P.J., and BRECKENRIDGE, J., concur.

---

**2.** The officer described a felony traffic stop as a procedure used by the Highway Patrol when dealing with people who may be armed and dangerous. He testified that another officer covered him with his handgun while he handcuffed each of the car's occupants for the officers' safety.

**3.** East relies on State v. Heinrich, 492 S.W.2d 109 (Mo.App.1973), and State v. Stockbridge, 549 S.W.2d 648 (Mo.App.1977), for support that lack of objection to the state's closing argument was not fatal to his claim. We distinguish those cases on their facts.