**STATE of Missouri, Plaintiff–Respondent**

v.

**Ryan A. SLAUGHTER, Defendant–Appellant.**

**No. SD 28799.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 5, 2008.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, for respondent.

JOHN E. PARRISH, Judge.

Ryan A. Slaughter (defendant) was convicted, following a jury trial, of robbery in the first degree, § 569.020,[1] and armed criminal action, § 571.015. This court affirms.[2]

Defendant burst into Higginbotham's Jewelry Store in Joplin, Missouri, and pointed a gun at an employee, LeeAnn Hackney. Defendant yelled for her to "get down" and told her "this is a robbery." Defendant grabbed Ms. Hackney and threw her to the floor, telling her to give him her jewelry. She gave defendant her jewelry, after which he tied her arms behind her back.

Defendant emptied a trash can and appeared to put watches that were on a repair desk in the trash can. He also put jewelry in the trash can. Defendant left the main room in the store, and then came back to where Ms. Hackney was on the floor. It felt to her as if he put his knee on her back and put the gun to her head.

Defendant told her to give the police a false description of who robbed her; that he knew who she was, where she lived, and he would hurt her.

After defendant left, Ms. Hackney got off the floor and tried to call for help. Her hands were still secured behind her back. She was unable to use the telephone. She ran outside the store building as a friend arrived to pick her up from work. She told her friend she had been robbed and to call 911.

Gary Wayne Mercer was near the jewelry store about the time of the robbery. He was waiting for his wife to get off work. He saw a truck with an Oklahoma license plate parked by a dumpster. A man standing beside the truck was removing a pair of coveralls. After taking off the coveralls, the man threw the clothes into the dumpster. Mr. Mercer called his wife and told her what he had seen; that she should call the police. Defendant drove away passing where Mercer was parked. As defendant passed Mercer, the two men looked at one another. Defendant quickly turned his head the opposite way. Mercer got the license plate number from defendant's truck. Mercer called his wife again. She had not yet called the police. He asked her to do so. She did.

Mr. Mercer went to the dumpster and waited for the police. He looked inside and "saw clothing, boots, a pair of leather

---

1. References to statutes are to RSMo 2000.

2. The transcript in this case was accepted for filing notwithstanding its questionable compliance with Rule 81.18(a). The transcript was filed January 29, 2008. Rule 81.18(b), as it existed then and as it continues to exist notwithstanding changes to the rule that became effective July 1, 2008, requires typewritten transcripts to conform to the requirement stated in Rule 81.18(a) that "[t]ypewritten documents shall be legible...." The printing on the part of the transcript filed in this case that recites testimony of witnesses is extremely dim, so dim that it arguably could be declared illegible. Although the transcript has been accepted and will be used for purposes of this court's review (albeit with considerable difficulty), the official court reporter who prepared this transcript and other court reporters who prepare transcripts are advised that the quality of the print in transcripts should be scrutinized and determined to be readable before being tendered for filing as components of records on appeal.

gloves, one was light and one was dark." When the police arrived they seized the items from the dumpster, including a hoodie and some tape. The tape was the type used to bind Ms. Hackney's hands behind her back during the robbery.

The license number Mr. Mercer provided was for a truck that belonged to "Ronald Slaughter" at an address in Grove, Oklahoma. Oklahoma Highway Patrol Trooper Eddie Rose drove to the Grove, Oklahoma, address. The truck was parked in front of the residence. Defendant was inside the house. Trooper Rose arrested defendant for suspicion of armed robbery. He was placed in Trooper Rose's patrol car and read his *Miranda*[3] rights.

Defendant asked Trooper Rose if he could get his medication from his pickup. Trooper Rose told defendant he would get it. Defendant said the pickup was not locked. Trooper Rose asked defendant, "You're absolutely sure you're okay with me going up to your truck and getting your medication?" Defendant answered, "Yes, absolutely." When Trooper Rose went to defendant's pickup, he "observed in plain view a black long-barreled handgun that was a BB gun." He left the gun in place, got defendant's medicine, and took defendant to jail.

After taking defendant to jail, Trooper Rose and Trooper Keith Barrenberg returned to defendant's pickup with a search warrant. They seized the gun. They also found and seized business envelopes from the jewelry store.

Joplin Police Detective Howard Tackett went to Oklahoma after he learned that defendant had been arrested. He participated in a search of defendant's home. He saw jewelry on top of a dresser in the dining room area. Trooper Rose also re-ceived other jewelry from one of defendant's neighbors.

Trooper Rose talked with a man named William Bloomer. Bloomer brought Trooper Rose a pillowcase half-full of jewelry. Defendant had contacted Bloomer and asked to borrow $100 and asked Bloomer to arrange for him to stay at the Cowskin Prairie Motel. Defendant gave Bloomer a sack of watches and jewelry that defendant intended to trade the next day for cash to repay Bloomer.

Robert Manness owned Higginbotham's Jewelry Store. He identified photographs of items recovered from police searches of defendant's residence. The items in the photographs were inventory and trays in which inventory was displayed that had been taken from the jewelry store. He also identified items that belonged to customers, primarily watches that had been left for repair, that were taken from his store.

Defendant asserts two points on appeal. Point I is directed to the admission in evidence of a recording of telephone conversations between defendant and others while defendant was incarcerated in the Delaware, Oklahoma, jail. Point II is directed to a statement by Trooper Rose that defendant had not talked to him. Additional facts relevant to each point are included in the discussion that follows.

Point I contends the trial court erred in admitting in evidence State's Exhibit No. 14 and allowing the recordings on the exhibit to be played to the jury "because the recordings were inadmissible in that they did not have an adequate foundation." Detective Tackett was asked at trial if he was aware of some recordings that were made at the Delaware County Jail. He answered that he was. The following col-

---

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

loquy occurred between the trial attorneys and the judge.

[DEFENDANT'S TRIAL ATTORNEY]: Judge, I'm going to go ahead at this time and pose an objection to any testimony about these recordings and ultimately I'd be objecting to their admission. The State has provided us a business records affidavit purporting to sponsor this as a business record. I don't believe they have an appropriate witness as to the foundation required for an audio recording. The—without this foundation I think it would be highly prejudicial to admit this testimony about the recordings, let alone the recordings themselves which is where I believe they're heading.

[THE ASSISTANT PROSECUTING ATTORNEY]: This Detective, during his investigation he was made aware of telephone calls that were made by the Defendant on the day of his arrest to his mother. When Detective Tackett became aware of those telephone conversations he obtained a copy of the recordings themselves, they were on a CD. He took possession of them so I think he identified them that way.

BY THE COURT: The objection's overruled at this point.

Detective Tackett then told the trial court that he had obtained copies of recordings. He identified State's Exhibit No. 14 as "the CD with the phone conversations," after which the prosecuting attorney offered State's Exhibit No. 14 in evidence. The following discussion then occurred be-

tween the trial court and defendant's trial attorney.

BY THE COURT: Same objection?

[DEFENDANT'S TRIAL ATTORNEY]: Same objection with some further argument.

BY THE COURT: Sure, come on up. (Counsel approached the Bench and the following proceedings were had.)

[DEFENDANT'S TRIAL ATTORNEY]: Kind of in case [the assistant prosecuting attorney's] planning to play the recording now or at some other point I do want to add that it would be a violation of my client's due process to admit this audio recording without the proper foundation as to the actual audio recording itself not just the identity of the disc on which they're contained.

BY THE COURT: The objection is overruled.

(The proceedings returned to open Court.)[4]

■ Defendant's objection at trial did not preserve the issue of the admissibility of State's Exhibit No. 14 for appellate review. Further, his claim of trial court error in Point I does not meet the requirements of Rule 84.04(d) for points relied on in an appellant's brief.[5] Defendant's objection to the admission of State's Exhibit No. 14 was not " 'sufficiently clear and definite' so that the counsel ha[d] the opportunity to correct any error and [for] the trial court [to] correctly rule on the objection." *Refrigeration Industries, Inc. v. Nemmers,* 880 S.W.2d 912, 919 (Mo.App.1994). Defendant's objection was nothing more

---

**4.** Although the objection to the admission of State's Exhibit No. 14 was overruled, the transcript does not reveal that the trial court expressly admitted the exhibit in evidence. The trial attorneys nevertheless received the understanding from the trial court that the exhibit was in evidence. As such, Exhibit No. 14 is deemed as having being admitted in

evidence. *See Pope v. Pope,* 179 S.W.3d 442, 465 (Mo.App.2005); *In re Estate of Graham,* 59 S.W.3d 15, 20–21 (Mo.App.2001).

**5.** Rule 30.06 requires appellants' briefs in criminal cases to be prepared as provided by Rule 84.04.

than a claim that there was insufficient foundation to permit the exhibit to be admitted in evidence. An objection that there is a "lack of foundation" does not sufficiently state grounds for denying the admission of the exhibit and, therefore, preserves nothing for appellate review. *Id. See also Lester E. Cox Medical Centers v. Richards*, 252 S.W.3d 236, 240 (Mo. App.2008).

Defendant's Point I is, likewise, deficient. An appellant's brief in an appeal from the decision of a trial court must contain points relied on that comply with Rule 84.04(d)(1). Each point must:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Point I does not explain in the context of the case what "foundation" was lacking for the admission of the exhibit in evidence. It does not comply with Rule 84.04(d)(C). The requirements of Rule 84.04 are mandatory. *Maroney v. Maroney*, 953 S.W.2d 644, 646 (Mo.App.1997).

The claim attempted to be asserted by Point I that the trial court erred in admitting State's Exhibit No. 14 in evidence was not preserved for review by proper objection at trial when the exhibit was offered in evidence. Furthermore, the point relied on in defendant's appellant's brief is deficient so as to preserve nothing regarding that issue for appellate review. Point I is denied.

■ Point II contends that the trial court committed plain error "in not *sua sponte* declaring a mistrial" during the course of Trooper Eddie Rose's testimony. Point II is directed to the following questions the prosecuting attorney asked Trooper Rose and Trooper Rose's answers.

Q. Did [defendant] make any statements to you at the time of his arrest?

A. I told him what was going on, why he was being arrested and he had been arrested for suspicion of an armed robbery in Joplin of a jewelry store the day before. And he told me he wasn't in Joplin, he had been home the entire day the day before.

Q. What did you do next?

A. I escorted him to my patrol car, placed him (sic) the car, I read him his Miranda rights off of the card at which point he said he did not want to answer—did not want to speak to me about the incident.

Q. He didn't want to talk to you any more?

A. Right.

Q. He was exercising his rights pursuant to Miranda> [sic]

A. Right.

Defendant argues that the trial court erred "because the trooper's response, that [defendant] exercised his Miranda rights and did not talk to him, was an impermissible comment on [defendant's] post-Miranda silence … in that it advised the jury that [defendant] chose to exercise his right to silence."

■ "A specific objection to evidence when offered at trial is required to preserve the issue of the admissibility of the evidence for appellate review." *State v. Fulliam,* 154 S.W.3d 423, 426 (Mo.App. 2005). Defendant did not object at trial to the testimony he now asserts was error to admit. Thus, he did not preserve that claim of error for review. Defendant obviously recognizes his shortcoming in that he now requests review for plain error as permitted by Rule 30.20.

> Rule 30.20 permits this court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion.

*State v. Hagan,* 150 S.W.3d 358, 363 (Mo. App.2004).

> The existence or non-existence of plain error is determined by reviewing facts and circumstances on a case-by-case basis. *State v. Frankenberg,* 876 S.W.2d 286, 288 (Mo.App.1994); *State v. Miller,* 604 S.W.2d 702, 706 (Mo.App. 1980). "Plain error is evident, obvious and clear error." *State v. Bailey,* 839 S.W.2d 657, 661 (Mo.App.1992). Determination of whether to grant plain error review involves a two-step analysis. *State v. Campbell,* 122 S.W.3d 736, 740 (Mo.App.2004).

> > The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Rhodes,* 988 S.W.2d 521, 526 (Mo.banc 1999); *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). If facially substantial grounds are found to exist, the appellate court should ... determine whether manifest injustice or a miscarriage of justice has actually occurred. *See State v. Rogers,* 51 S.W.3d 879, 880 (Mo.App.2001). If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.; State v. East,* 976 S.W.2d 507, 509–10 (Mo. App.1998).

> *Id.*

*State v. Ward,* 235 S.W.3d 71, 75–76 (Mo. App.2007).

Defendant's asserted claim of plain error in admitting testimony that he chose to remain silent after receiving *Miranda* warnings facially establishes substantial grounds for believing that there was a manifest injustice or miscarriage of justice. *See State v. Howell,* 838 S.W.2d 158, 161 (Mo.App.1992) ("The law is well established in Missouri that the silence of an accused while under arrest is not admissible against him.") However, the facts in this case do not substantiate that a manifest injustice or a miscarriage of justice occurred. "[W]hile it is improper to use a defendant's post-arrest post-*Miranda* silence 'either as affirmative proof of a defendant's guilt or to impeach his testimony,' *State v. Howell,* 838 S.W.2d [at 161], a defendant's silence can be mentioned if it is not used for either of those purposes." *State v. Anderson,* 79 S.W.3d 420, 441 (Mo.banc), *cert. denied,* 537 U.S. 898, 123 S.Ct. 199, 154 L.Ed.2d 168 (2002), citing *State v. Mathenia,* 702 S.W.2d 840, 842 (Mo.banc 1986).

The testimony in this case was not used as affirmative proof of defendant's guilt or

to impeach testimony by him. Further, there was strong evidence of defendant's guilt apart from Trooper Rose's reference to statements made by defendant. There was no manifest injustice or miscarriage of justice. Point II is denied. The judgment is affirmed.

LYNCH, C.J., and BURRELL, P.J., concur.