**STATE of Missouri, Plaintiff–
Respondent**

v.

**Billy Joe WARD, Defendant–Appellant.**

**No. 27976.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 11, 2007.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., for respondent.

JOHN E. PARRISH, Presiding Judge.

Billy Joe Ward (defendant) was convicted, following a jury trial, of attempted statutory sodomy in the second degree, §§ 564.011 [1] and 566.064, and attempted enticement of a child, §§ 564.011 and 566.151. Defendant was charged, tried, and sentenced as a prior offender. *See* § 558.016.2. This court affirms.

Jim Murray works as a detective with the Diamond, Missouri, police department. He "primarily deal[s] with incidents involving the internet, such as fraud or solicitation on minors." In January 2006, Officer Murray was conducting an investigation. He was asked what precipitated the investigation. He answered that he had been advised there was the possibility "a subject" was trying to entice or meet young girls by way of the internet or in person; that the focal point of the investigation was defendant.

Detective Murray found an online profile for defendant under the screen name "Winterwolf772000." The profile included defendant's real name, address, telephone number, and picture. It stated his age as 30. Detective Murray established an online profile for a fictitious 13–year–old named Ashley. He established a Yahoo ID for her as "ashleyanne1938." The profile did not give Ashley's age. (Detective Murray, speaking as Ashley, explained, "It makes it more convenient for me to tell my age in the first chat.") The profile stated that Ashley was a single female. It listed her occupation as "student." Her hobby was "hanging out at the Joplin mall."

After establishing Ashley's profile, Detective Murray, as Ashley, requested that defendant add Ashley to his instant messaging and sent an instant message ("IM") to defendant. The next day defendant and Ashley began exchanging messages. Defendant asked Ashley how old she was. Ashley told him she was 13.

After Ashley told defendant she was 13, defendant replied that he was 32; that she was "way too young" for him. Defendant asked, "Are you a cop?" He was told "no." Defendant told Ashley that the minimum age for him was 18. Defendant nevertheless told Ashley to "IM me later or call me," and again asked her name. He asked where she lived. Ashley answered, "Diamond." Defendant continued the exchange. He asked if Ashley had a way to Joplin. Ashley answered that she might have a way to get there Friday after school; that she could ask a friend to take her.

Ashley contacted defendant later and told him a friend would take her to Joplin; that they went to the mall a lot and shopped. Defendant responded to Ashley's message. He asked where she was. Ashley replied, "At home. I played hooky today. Shhh. Don't tell." Defendant asked Ashley to call him. He gave her his telephone number. Ashley told defendant her mother had just come in and asked if he would "be on in an hour." Ashley told defendant her mother would be going to Neosho; that she could call then. Defen-

[1]. References to statutes are to RSMo 2000.

dant told her, "Call me. I need to hear your voice."[2]

Defendant continued the exchange with Ashley. He asked why she chose him. Ashley told him because he lived in Joplin and had a sexy picture on his profile; that it appeared he did not have clothes on in the picture. She concluded the statement with "LOL" which Detective Murray said meant "laughing out loud." Defendant replied, "And you liked that. You know, I could get in real trouble if we got caught. And you don't mind that I am older?" Ashley answered, "Don't tell my mom. Okay?"

Defendant told Ashley that he got off work at one or two a.m. He asked if Ashley could come see him then. Ashley told him to let her think about how she could work that out. The meeting place was to be a truck stop in Joplin. Detective Murray contacted Jasper County law enforcement authorities who, along with a female decoy arranged by Murray, waited at the truck stop from about 1:30 a.m. until 2:30 a.m., but defendant never appeared.

The next evening, about 7:35 p.m., defendant contacted Ashley by e-mail. He told Ashley he had gotten off work late the night before and asked if they could meet right then at the truck stop. Defendant again asked, "You ain't no cop, are you? If I smell police, I'm out of there." The communication continued. Defendant asked why Ashley wanted to have sex with older guys; if she knew they could get in trouble. Ashley asked if defendant would bring condoms. He asked if he would need them. Ashley told defendant that the girls at school said that was safest.

Defendant told Ashley what door to use at the truck stop and added, "I am sterile; I don't have anything." Defendant asked

again why Ashley would like to have sex with older men. Ashley answered that she had not had sex before; that older men talked like it was exciting. Defendant told Ashley to tell him, and keep telling him, that she was 18; that he needed to have that in his thoughts. Ashley told him that she would if he wanted; that she would tell him she was 50, adding "LOL".

Defendant made plans to meet Ashley that evening, January 14, 2006, between 9:30 and 10:00 p.m. at the truck stop. Ashley told defendant she would be wearing a red ball cap. After the communication ended, defendant initiated another asking Ashley what she had done sexually. He asked if she had touched a penis. Ashley answered that she had "through jeans" and asked defendant, "Do you want me to touch yours?" Defendant answered, "Okay. So do you know what I want from you? Do you know what I will be teaching you then? You do want me to teach you, right?" Ashley said "[y]es." Defendant instructed Ashley to "[w]ear shorts, t-shirts, no panties or bra." He told Ashley to wear something he could remove quickly and to "bring some lube."

Detective Murray contacted a female police officer to act as decoy at the truck stop. He told her to wear a red ball cap. Detective Murray had defendant's photograph and defendant's Yahoo profile. Detective Murray told the court and jury:

> I arrived at 9:30, right at 9:30, and saw [defendant] sitting at a table inside [the truck stop] on the south—on the west side of [the truck stop], that area, and he got up and went into the restaurant area and looked around, and came back and sat down at the table.

The decoy arrived. She walked from the east side of the truck stop and went to

---

**2.** Detective Murray arranged for a woman to call defendant. He arranged for the wife of the Diamond, Missouri, chief of police to place the call later that day.

the door she had been told to use. About two minutes later, defendant got up and went to the door where the decoy had gone outside. Detective Murray followed defendant outside and intercepted him before he reached the woman decoy. Defendant acknowledged that Ashley told him she was 13 years old; that his e-mail address was the one Ashley had communicated with.

 Defendant's first point on appeal claims the trial court committed plain error by not *sua sponte* instructing the jury to disregard Detective Murray's testimony that he focused his investigation on defendant because he was advised that defendant was trying to entice young girls over the internet. Defendant argues that the testimony was hearsay; that he was denied a fair trial and, therefore, the failure to instruct the jury to disregard the testimony resulted in manifest injustice.

 The testimony to which defendant refers in Point I was admitted at trial without objection. A claim that it was error to admit testimony at trial to which no objection was made is not preserved for appellate review. *State v. Skipper,* 101 S.W.3d 350, 354 (Mo.App.2003). Defendant obviously recognizes this in that he contends it was plain error to admit the testimony.

> Rule 30.20 permits this court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion.

*State v. Hagan,* 150 S.W.3d 358, 363 (Mo. App.2004).

The testimony about which defendant complains in Point I occurred during the early part of Detective Murray's testimo-

ny. He testified about how he used the internet to identify persons that appeared to be interested in young girls. He said he always made sure the persons with whom he communicated knew the age of the girls he portrayed was 13. Defendant's trial counsel objected, apparently on the basis of relevancy, although defense counsel was not specific, stating the testimony was "totally general and doesn't have anything to do specifically with what this guy understood, my client." Following a discussion at the bench, the trial judge instructed the prosecuting attorney "to get specific" rather than continuing to tell the jury what he generally did. The prosecuting attorney stated that he was "moving on into the specifics." The proceedings continued with the prosecuting attorney asking the following questions and Detective Murray giving the following answers:

Q. Jim, I'm going to ask you, were you conducting such an investigation during January of 2006?

A. Yes.

Q. And what, if anything, precipitated this investigation?

A. I was advised that there was a possibility that a subject was trying to entice or meet by way of internet or in person young girls.

Q. Who was the focal point of that investigation?

A. [Defendant].

 The existence or non-existence of plain error is determined by reviewing facts and circumstances on a case-by-case basis. *State v. Frankenberg,* 876 S.W.2d 286, 288 (Mo.App.1994); *State v. Miller,* 604 S.W.2d 702, 706 (Mo.App.1980). "Plain error is evident, obvious and clear error." *State v. Bailey,* 839 S.W.2d 657, 661 (Mo.App.1992). Determination of whether to grant plain error review in-

volves a two-step analysis. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App.2004).

The first step of this analysis is to determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo.banc 1999); *State v. Brown*, 902 S.W.2d 278, 284 (Mo.banc 1995). If facially substantial grounds are found to exist, the appellate court should then move to the second step of this analysis and engage in plain error review to determine whether manifest injustice or a miscarriage of justice has actually occurred. *See State v. Rogers*, 51 S.W.3d 879, 880 (Mo.App.2001). If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.; State v. East*, 976 S.W.2d 507, 509–10 (Mo.App.1998).

*Id.*

This court does not discern, on its face, obvious and clear error with respect to the trial court not *sua sponte* advising the jury to disregard the testimony about which defendant now complains. No substantial grounds were shown for believing that manifest injustice or miscarriage of justice resulted under the facts and circumstances of this case. The request for plain error review in Point I is denied.

■ Point II is directed to defendant's conviction of attempted statutory sodomy in the second degree. Point II argues that the trial court erred in denying defendant's motion for judgment of acquittal on that charge "in that the evidence viewed in the light most favorable to the verdict did not establish that [defendant] intended to commit deviate sexual intercourse."

"A person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age." § 566.064.1. " **'Deviate sexual intercourse'** [is] any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim." [3] § 566.010(1).

"A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A **'substantial step'** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 564.011.1.

As explained in *State v. Gilbert*, 103 S.W.3d 743, 749 (Mo.banc 2003):

In reviewing the sufficiency of evidence to support a conviction, this Court views the evidence, together with all reasonable inferences, in the light most favorable to the State, disregarding all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). "[R]eview is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond

---

**3.** At the date of the offense for which defendant was convicted, the words "or for the purpose of terrorizing the victim" were not included in the statute. *See* 2006 Mo. Laws, CCS SS SCS HCS HB 1698, 1236, 995, 1362 & 1290, p. 341.

a reasonable doubt." *[State v.] Dulany,* 781 S.W.2d [52] at 55 [(Mo.banc 1989)].

Defendant asked Ashley during their January 14, 2006, communication, prior to their planned meeting, if Ashley had "ever touched a penis before." When Ashley asked if he wanted her to touch his penis, he replied, "Okay." The communication continued with defendant telling Ashley there were things he would teach her.

Defendant was told that Ashley was 13 years old.[4] He was over 21 years old. After the final January 14 communication, defendant proceeded to the location where he was to meet Ashley. When defendant saw the decoy sent in place of Ashley, wearing a red ball cap as he had been told Ashley would be wearing, he proceeded toward her. He was intercepted by Detective Murray.

The evidence was sufficient for a reasonable juror to find defendant guilty beyond a reasonable doubt of attempted statutory sodomy in the second degree. Point II is denied. The judgment of conviction is affirmed.

BATES and SCOTT, JJ., concur.

---

4. The fact that defendant was not communicating with someone less than 17 years of age is no defense, *see* § 566.064.1, in that § 564.011.2 provides, with respect to prosecution for an attempt to commit an offense, that "[i]t is no defense ... that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be."