

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
              Respondent, )
) No. SD37200
    v. )
) **Filed: November 21, 2023**
MARCUS L. LAVENDER, )
)
              Appellant. )

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable John D. Beger, Judge

## AFFIRMED

Marcus Lamont Lavender appeals his convictions by a jury of one count each of

assault in the second degree, armed criminal action, endangering the welfare of a child,

and unlawful possession of a firearm. He asserts two points on appeal. In his first point,

Lavender claims the trial court erred in finding that he knowingly and intelligently waived

his right to counsel in that the trial court failed to secure a written waiver in compliance

with § 600.051[1] and failed to conduct an adequate *Faretta* hearing.[2] In his second point,

Lavender claims the trial court erred in denying his motion for a new trial which asserted

---

[1] Statutory references are to RSMo (2016).
[2] ***Faretta v. California***, 422 U.S. 806 (1975).

an exonerating witness was never subpoenaed to testify. Finding no merit to either point on appeal, we affirm.

## Background

Lavender has not challenged the sufficiency of the evidence to support his convictions, so we summarize only that evidence which is relevant to his points on appeal. We are required to view the evidence in the light most favorable to the jury's verdicts. *State v. Vandergrift*, 669 S.W.3d 282, 291 (Mo. banc 2023).

In a pretrial hearing held on May 19, 2021, Marcus Lamont Lavender first asked the trial court for leave to proceed *pro se* in the case. The court informed Lavender that it could grant him leave to represent himself "if the Court determines that you're qualified to do so." The judge informed Lavender he faced "very serious charges" that "carry up to life in prison, plus an unlimited number of years, as well as some additional years for some lesser felonies," and expressed concern that Lavender was not able to represent himself.

> [MR. LAVENDER]: Okay. Allow me to alleviate your concerns. It should be said that all vessels of Marcus Lamont Lavender and not limited to Marcus Lamont Lavender together with all derivatives are not acting in any capacity, public or private, under federal, territorial and municipal capacity and have not knowingly and willingly acted in any such capacity since the day of nativity December 10, 1975.
>
> All vessels are duly claimed by the holder in due course and held under published common law copyright since December 10, 1975.
>
> Now, with that being said, I also act as attorney in fact for the real man, that is me—gives me the right to represent myself under common law.

> THE COURT: Anything else you wish to say on the matter?

> [MR. LAVENDER]: That brings me to my original question that I had. You and

the prosecutor have taken oaths of office to up—support and uphold the Constitution of the United States of America and that of this State; is that correct?

THE COURT: Every officeholder in the country takes such an oath.

[MR. LAVENDER]: So I take that as a yes. So pursuant to your oaths, you are required to abide by those oaths in the performance of your official duties, especially those before this Honorable Court; is that correct?

THE COURT: I'm gonna tell you again, Mr. Lavender, I'm not here to answer your questions. I'm here to—I'm here to hear your argument that you should be allowed to represent yourself.

So far the statements you are making cause me to believe you are not competent to represent yourself.

[MR. LAVENDER]: So these are simple yes-or-no questions that I'm asking you. And these questions are asked for a very specific reason. So are you prepared to honor your oath?

THE COURT: [Defense counsel], do you have anything you wish to say in this matter?

[COUNSEL]: Your Honor, Mr. Lavender does not wish for me to represent him. I have spoken to Mr. Lavender. He did not want me to subpoena any witnesses if he is granted leave to represent himself. But as he does not wish for me to represent him, I would ask to be—for leave to withdraw.

I have nothing beyond that.

THE COURT: Mr. Lavender?

[MR. LAVENDER]: Yes, Your Honor. Your Honor, I appear in front of this Court by a special living, breathing natural-born American citizen on the land and claiming all rights guaranteed to me in the federal and state Constitutions and with my name spelled only in upper and lower case letters.

Is [sic] there any objections to what I just stated?

THE COURT: There's [sic] no objections, sir. However, one of the rights guaranteed to you by the United States and Missouri Constitutions is the right to counsel by statute. You cannot represent yourself unless and until the Court is satisfied that

3

you're competent to do so.

The statements you have made today cause the Court to believe you are not competent to do so. Your motion to waive counsel and represent yourself is denied.

The motion to withdraw by counsel is denied. This matter continues to trial on June 14.

[COUNSEL]:        Yes, sir.

[MR. LAVENDER]:  Well, seeing as how I'm not acting as a U.S. citizen, citizen of the United States or United States citizen, I fail to recognize your authority to make such a decision against me.

THE COURT:       That will conclude this matter. I will see you again on June 14th, Mr. Lavender.

The court took up the question of self-representation with Lavender and his appointed public defender again at a second pre-trial hearing on June 8, 2021. Lavender again expressed his desire to represent himself and fire his attorney. The trial court commenced a colloquy with Lavender regarding his ability to represent himself. Lavender stated that he graduated from high school and could read and write the English language. The court noted that Lavender had been a defendant in his court in the past and in another judge's court.

[THE COURT]:     And so you generally know the court process; is that a fair statement?

[MR. LAVENDER]:  I have a pretty good idea.

[THE COURT]:     Do you understand then that the process proceeds by the State calling witnesses and questioning those witnesses; and if you're representing yourself, you would have the opportunity to cross-examine those witnesses?

Do you understand that?

[MR. LAVENDER]:  I—I acknowledge that.

4

. . .

[THE COURT]: Do you also understand that if the State asks an improper question, it would be up to you, if you're representing yourself, to object to that question?

[MR. LAVENDER]: I'm aware of that.

[THE COURT]: If you fail to object, then it's possible that that would be—the improper question and whatever testimony is in response to that improper question would come before the jury.

Do you understand that?

[MR. LAVENDER]: I'm aware of that.

[THE COURT]: Also in a jury trial there's the process of voir dire or jury selection, and you would have the opportunity, if you wanted to, to question jurors.

Do you understand that?

[MR. LAVENDER]: I am aware of that.

[THE COURT]: And are you also aware that at the beginning of the trial you have the opportunity to make an opening statement, and at the end you have the opportunity to make a closing statement?

Do you understand that?

[MR. LAVENDER]: I'm aware of that also.

[THE COURT]: And if you represent yourself, then you would do all those things and not your attorney.

Do you understand that?

[MR. LAVENDER]: I'm aware of that.

[THE COURT]: Did anybody threaten you or a loved one to get you to give up—or to ask to fire your lawyer?

[MR. LAVENDER]: No.

[THE COURT]: You're doing that solely on your own?

5

[MR. LAVENDER]: Yes.

[THE COURT]: Is there something—is there something between you and [defense counsel] that you believe prevents her from acting as your lawyer in this case?

[MR. LAVENDER]: No. No, it's nothing personal or anything like that. It's strictly business.

[THE COURT]: Okay. And so there's no conflict of interest that you're aware of?

[MR. LAVENDER]: Well, there is one.

[THE COURT]: Can you tell me what that is?

[MR. LAVENDER]: The fact that the Plaintiff in my case also employs you, the prosecutor, pays the wages for the attorney who is representing me, pays the wages for everybody who's building evidence against me, that, in its very least, is a conflict of interest.

[THE COURT]: You mean the taxpayers?

[MR. LAVENDER]: The taxpayers are not the State of Missouri.

[THE COURT]: Well, who is it, then, are you saying that pays my salary and the prosecutor's salary and the investigators' salaries?

[MR. LAVENDER]: The State of Missouri, the same Plaintiff against me.

[THE COURT]: Okay. Well, to my knowledge, that's not yet been determined to be a conflict of interest.

Other than that, are you aware of any conflict of interest between [defense counsel] and yourself?

[MR. LAVENDER]: No.

[THE COURT]: Would you have an objection to [defense counsel] being available to you and at your side to provide legal advice if you were to ask for it during trial?

[MR. LAVENDER]: Yes, that is the—the arrangement that [defense counsel] and I spoke of.

6

| | |
|---|---|
| [THE COURT]: | Okay. And if I grant your wish to represent yourself, will you be in a position to go forward with trial on Monday? |
| [MR. LAVENDER]: | I'm prepared for that. I am prepared to act as a pro-se litigant. |
| THE COURT: | All right. [Defense counsel], is [sic] there any questions you believe needs [sic] to be asked of Mr. Lavender at this time? |
| [COUNSEL]: | No, sir. |
| . . . | |
| THE COURT: | All right. Then the Court will find that Mr. Lavender, despite its earlier ruling, is, in fact, competent to represent himself in this matter and desires to do so, and has made that decision of his own volition and not under any duress or coercion. And the Court will grant that wish. |

The court then took up pre-trial matters, among these was a *pro se* motion filed by

Lavender that challenged the court's subject matter jurisdiction.

| | |
|---|---|
| THE COURT: | You may go ahead and tell me why you think the Court lacks jurisdiction. |
| MR. LAVENDER: | Enacting clauses determine what a law applies to—the law applies to. Every law has to have an enacting clause in order to be valid. |
| | Where are the enacting clauses of the laws that are being—that I'm being accused of breaking? |
| THE COURT: | I think before, Mr. Lavender, I told you that the Court was not here to answer your questions. If you have an argument to make regarding enactment clauses—or enacting clauses, you may do so. But I'm not gonna answer your questions. |
| MR. LAVENDER: | Very well. |
| | I am here being accused of breaking statutes and codes. Statutes and codes do not have enacting clauses and, |

7

therefore, are not laws. And if they're not laws, then they must be something else.

If I haven't broken any laws, why am I hear [sic]? So I motion to dismiss on the grounds of lack of subject matter jurisdiction.

THE COURT: [Prosecutor], do you wish to be heard?

[PROSECUTOR]: Judge, I don't know what to say to that, except to say that there are enacting clauses with respect to the laws that are passed in the State of Missouri.

And, you know, if Mr. Lavender wants to represent himself, then he needs to do a little bit more research in order to refute that fact.

As the Court knows, every single session of the Legislature there are bills that are sent through the legislative bodies, both of them, the House and the Senate, and those are voted on by the Legislature.

And the beginning of each and every one of those bills gives the reason why that bill is being sent to the Legislature. When it finally becomes a law, there is an enactment clause at the beginning.

It always says what the purpose is of the law. It says what the purpose is of the following changes in whatever statutes it does change or that it enacts.

So I believe that Mr. Lavender's point here is not well taken.

THE COURT: Mr. Lavender, the Legislature, as I recall, revised the criminal code in 2016, effective January 1 of 2017 and there was an enactment clause for the revision of that code, so that would cover Count I, Section 565.050, wherein you're charged with the Class A felony of assault in the first—first degree.

It would also cover Section 568.045, Count III, wherein you're charged with the Class D felony of endangering the welfare of a child as well as 571.070, Count IV, wherein you're charged with the Class D felony of possession of a firearm.

8

It may not cover Count II, armed criminal action, which I don't believe was revised by the passage of the new criminal code. Now I may be wrong about that, but in any case, armed criminal action, when it was enacted, there was an enactment clause.

[Defense counsel], do you wish to add anything further to this discussion?

[COUNSEL]: No, sir.

THE COURT: Then the Court will show that the motion to dismiss was heard and denied.

The State then asked the court to take up Lavender's *pro se* filing, which he called a "condition precedent."

THE COURT: Do you wish to be heard further on that?

MR. LAVENDER: I do.

THE COURT: Go ahead.

MR. LAVENDER: I am a peaceful American state civilian. I am not a citizen of the federal, territorial or municipal United States. And therein the revised statutes and codes that are used under the color of law do not apply to me.

THE COURT: Anything else, [Prosecutor]?

[PROSECUTOR]: Your Honor, I—I don't know that I need to say anything else, other than to say that all of the statutes and codes that are referenced in this request form are with respect to entities, person, countries, states making contracts with the United States of America. It has nothing to do with Missouri.

And as the Court knows, when you are in and on the place in Missouri, you are subject to Missouri law. So I believe it would be – the condition precedent that Mr. Lavender refers to, it again, is not well taken.

MR. LAVENDER: Well, the condition precedent, if you read it, lets you know that I am not acting as a person per definition of 28 USC 3002. I am a blood and flesh man, not a person. I am alive, not a dead legal fixture.

9

| | |
|---|---|
| THE COURT: | I don't believe anybody is disputing that, Mr. Lavender. But [the prosecutor] is correct, when you're in Missouri, you're subject to Missouri law, unless you're on federal ground. |
| | And since the allegation is that the acts with which you're charged took place in Pulaski County, the grievance is denied. |

. . .

| | |
|---|---|
| THE COURT: | [Defense counsel], I'm—even though Mr. Lavender is going to be representing himself, the Court is going to ask you to be available to him through the trial to provide legal advice if need be. |
| [COUNSEL]: | I can do that, sir. And I've also agreed to provide Mr. Lavender with civilian clothing, and I'll provide whatever assistance is required. |
| THE COURT: | Mr. Lavender will be allowed to wear civilian clothing during the trial, and any restraints will be non-visible. |
| MR. LAVENDER: | [Defense counsel], will you please send out the subpoenas to the witnesses? |
| [COUNSEL]: | I will find out who you want subpoenaed and I will get those sent out. |
| MR. LAVENDER: | Thank you. |
| [PROSECUTOR]: | Now, Your Honor, if there's [sic] witnesses, I need to know who they are because that is something that is owed to the State through discovery. |

. . .

| | |
|---|---|
| [COUNSEL]: | With Mr. Lavender's permission, I'll provide that to you . . . . |

On the first day of trial, the court revisited the question of Lavender's self-representation.

| | |
|---|---|
| THE COURT: | All right. The State appears by a whole lot of people; the Defendant appears pro se with stand-by counsel, [Defense counsel]. |

[Defense counsel], do you want to make a record?

[COUNSEL]: Yes. Yes, Your Honor.

I would ask leave to withdraw. I am here under the auspices of the Public Defender's Office, and I would ask leave to withdraw.

THE COURT: Well, that's denied in part. The Court previously granted Mr. Lavender leave to represent himself and -- but I guess requested, but I will make it an order, that you remain as stand-by counsel –

[COUNSEL]: Thank you, sir.

THE COURT: -- should Mr. Lavender have any questions for which he needs to consult you.

Mr. Lavender, before we -- well, they're probably not bringing in the jury anyway. But before we do that, let me just inquire, do you have any pretrial matters that we need to discuss?

MR. LAVENDER: Well, the name of the -- my given name is Marcus Lamont with no Lavender.

THE COURT: Well, I'm not -- I'm not understanding what you mean by that. I mean, I understand your given name is Marcus Lamont and your last name -- surname is Lavender.

MR. LAVENDER: My heritage is Lavender.

THE COURT: Okay. But I'm going to identify you to the jury as Marcus Lavender or Marcus Lamont Lavender.

Mr. Lavender, before we go further in this matter, you recall last week when you were sworn with regard to representing yourself?

Do you understand that?

MR. LAVENDER: I do.

THE COURT: And you understand you're still under oath in this?

Do you understand that?

MR. LAVENDER: I do.

THE COURT: I wanted to inquire a little further. Do you understand the -- the gravity of these charges, that the assault first carries a range of punishment of up to life in prison?

Do you understand that?

MR. LAVENDER: I'm aware of their -- that there are charges.

THE COURT: Are you aware of the range of punishment on the charges?

MR. LAVENDER: I'm aware of that, too.

THE COURT: Let me just review that with you, because the -- Count I is assault in the first degree, which is a Class A felony and carries 10 to 30 years, or life in prison.

Count II is armed criminal action, which is a term of imprisonment not less than three years up to an unlimited number of years.

Count III is a Class D felony of endangering the welfare of a child, which is one to seven years in the Department of Corrections or up to a year in the county jail and/or a fine of up to $10,000.

And Count IV is a D felony of unlawful possession of a firearm. It carries the same range of punishment as Count III.

I just wanted you -- to make sure that you're aware of the range of punishment on these charges. With that in mind, you still wish to represent yourself; is that correct?

MR. LAVENDER: I do.

THE COURT: And do you understand that you'll be held to the same standard as the lawyers representing the State?

Do you understand that?

MR. LAVENDER: Well, a pro-se litigant isn't supposed to be held to those same standards.

THE COURT: Well, I'm gonna allow you as much leeway as I can. But there are still rules that we go by in the courtroom.

And if somebody -- if the State -- Counsel for the State would ask an improper question and you didn't object to it, then that

12

|  |  |
|---|---|
| | and the answer would come into evidence. |
| | Do you understand that? |
| MR. LAVENDER: | I'm aware of that. |
| THE COURT: | All right. If at any time you want to consult with [defense counsel], feel free to do so regarding courtroom procedure and what's taking place, all right? |
| | [Defense counsel], are you aware of any pretrial matters for the Defense? |
| [COUNSEL]: | No, sir. |

At trial, defense counsel (the appointed public defender), took on several in-court responsibilities. She cross examined the two child victims who testified at trial, using questions prepared by Lavender. She assisted Lavender in drafting the jury instructions involving self-defense and defense of a residence. She kept records of the trial. When the court set the sentencing date, she informed the court that Lavender wanted to waive the Sentencing Assessment Report. Defense counsel was also present for sentencing. Defense counsel filed Lavender's notice of appeal and the motion to proceed *in forma pauperis*.

At the sentencing hearing the court took up Lavender's motion for a new trial. Lavender claimed that a material witness to the acts alleged in the case never received a subpoena. Lavender stated that a subpoena was issued for the witness, but he did not receive it. Lavender also claimed the witness gave a statement to a deputy, who no longer works for the Pulaski County Sheriff. Lavender claimed that his statement "vanished into thin air." The court noted that there was no indication in Case.net that a subpoena for the witness was ever issued. The court noted that subpoenas were sent out for three other witnesses, but all were returned *non-est*. The trial court denied Lavender's Motion for a

new trial.

## Legal Principles

Preservation of a constitutional claim of error requires the defendant to raise such a claim "at the first opportunity" and subsequently in a motion for new trial. *State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023). If not so raised, our review is for plain error under Missouri Court Rule 30.20.[3] *Teter*, 665 S.W.3d at 312. Under that rule, the court has discretion to consider "plain errors affecting substantial rights" where manifest injustice or miscarriage of justice results. Under plain error review, the error must be "evident, obvious, and clear," and the defendant "must show the error was outcome determinative." *Id.* (quoting *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019)).

The Supreme Court of the United States has determined that the right to counsel embedded in the Sixth Amendment contains a "correlative right to dispense with a lawyer's help." *Faretta*, 422 U.S. at 814 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). This federal constitutional right applies to the states through the Fourteenth Amendment's Due Process Clause. *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007). "A demonstrated violation of a defendant's right to counsel satisfies the defendant's burden to prove the manifest injustice or miscarriage of justice required by plain error." *State v. Cox*, 659 S.W.3d 651, 653-54 (Mo.App. 2023).

"The decision whether to allow a criminal defendant to waive the right to counsel and exercise the right of self-representation is one of the most sensitive rulings required of a trial court." *Id.* at 654 (quoting *Black*, 223 S.W.3d at 155). To waive the right to counsel, the defendant must make the waiver unequivocally, in a timely manner,

---

[3] Rule references are to Missouri Court Rules (2021).

knowingly, and intelligently. ***Black***, 223 S.W.3d at 153. We employ "a strong presumption against the waiver of counsel." ***State v. Kunonga***, 490 S.W.3d 746, 762 (Mo.App. 2016) (citing ***Johnson v. Zerbst***, 304 U.S. 458, 464 (1938)).

> In Missouri, a defendant's waiver is not knowing and intelligent unless the court timely informs him as to the nature of the charges against him, potential sentences if convicted of the offenses, potential defenses he can offer, the nature of the trial proceedings, [and] the fact that, if the defendant refuses counsel, he will be required to proceed pro se and the dangers of proceeding pro se.

***Black***, 223 S.W.3d at 154 (alteration in original) (quoting ***City of St. Peters v. Hodak***, 125 S.W.3d 892, 894 (Mo.App. 2004)). These issues must be addressed at and the answers supported by "a thorough evidentiary hearing."[4] ***Teter***, 665 S.W.3d at 313 (quoting ***Black***, 223 S.W.3d at 155). In analyzing a knowing and intelligent waiver of the right to counsel, we look to the "particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." ***Black***, 223 S.W.3d at 154.

There is no specific "litany of questions" required in a *Faretta* hearing, but the trial court should evaluate the whole record to determine whether the waiver is knowing and voluntary. ***Teter***, 665 S.W.3d at 313, 315.

> [A] trial court should inquire into the defendant's capacity to make an intelligent decision and his knowledge of his own situation. . . . [T]he court should ensure that the defendant is not acting under duress, does not suffer from a mental incapacity, is literate and is minimally familiar with the trial process, including possible defenses to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged.
>
> . . .
>
> [T]he court should also make certain that the defendant understands the possible penalties if convicted. Trial courts should also be sure that the

---

[4] In deference to the Supreme Court of the United States, we have, over time, come to refer to these hearings as *Faretta* hearings.

defendant understands exactly what rights and privileges he is waiving, as well [as] the dangers associated with waiving constitutional rights. . . . [T]he court should first ensure that the defendant understands that he has the right to counsel, including appointed counsel if he is indigent. If the defendant chooses to continue, the court should advise him generally that it is usually a mistake to proceed without a lawyer and then specifically warn him about the dangers and repercussions of that decision.

*Teter*, 665 S.W.3d at 313 (alterations in original) (quoting *Black*, 223 S.W.3d at 156). "A trial court can only make certain that a defendant has knowingly, voluntarily, and intelligently waived the right to counsel 'from a penetrating and comprehensive examination of all the circumstances.'" *State v. Kunonga*, 490 S.W.3d at 764 (quoting *State v. Tilley*, 548 S.W.2d 199, 200 (Mo.App. 1977)). A defendant's "knowledge of all relevant facts need not appear in the trial record to support a finding that the waiver of counsel was proper." *State v. Ndon*, 583 S.W.3d 145, 154 (Mo.App. 2019). The State "bears the burden to prove that an unrepresented defendant waived the right to counsel." *Kunonga*, 490 S.W.3d at 765.

The trial court must also make its findings on the record. "Absent an inquiry on the record showing Defendant understood the ramification of the waiver of counsel, the imposition of jail time is unconstitutional." *State v. Nichols*, 207 S.W.3d 215, 225 (Mo.App. 2006) (quoting *State v. Johnson*, 172 S.W.3d 900, 902 (Mo.App. 2005)). The record must reflect that a defendant "knows what he is doing and his choice is made with eyes open." *State v. Watson*, 687 S.W.2d 667, 669 (Mo.App. 1985) (quoting *Faretta*, 422 U.S. at 835).

In Missouri, an additional requirement must be satisfied before a trial court can find a defendant effectively waived the right to counsel. *Kunonga*, 490 S.W.3d at 764. Section 600.051 of the Revised Statutes of Missouri codifies the waiver requirements announced in *Faretta*. The statute requires that a defendant waiving counsel do so in a

writing signed before the judge or clerk of the court. It also includes the specific elements that must be included in the waiver form. Although courts should err on the side of using the form, failure to obtain a signed form is not plain error in cases where a defendant proceeds with "standby" or "hybrid" counsel. *State v. Hunter*, 840 S.W.2d 850, 860 (Mo. banc 1992).

The Supreme Court of Missouri's most recent statement on the question of waiver of the right to counsel emphasizes a review of the record as a whole in determining whether a defendant knowingly and intelligently waived the right to counsel. *Teter*, 665 S.W.3d at 315. It also provides guidance regarding what a review of the whole record entails. *Id.* In *Teter*, the high court considered the defendant's conduct after the waiver of counsel as "circumstantial evidence" of what that defendant knew at the time of the waiver. *Id.* (citing *Jones v. Walker*, 540 F.3d 1277, 1293 (11th Cir. 2008)). The court also considered a criminal defendant's "past contacts with the criminal justice system" to be relevant to the knowing and voluntary waiver of counsel. *Id.* (quoting *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000)). The court considered the defendant's written motions and his performance as a *pro se* defendant at the different stages of the trial. *Id.* at 315-16.

> The entire record is reviewed to determine whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel, given the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused, with *the fundamental fairness of the proceeding whose result is being challenged being the ultimate focus of inquiry.*

*Teter*, 665 S.W.3d at 315 (emphasis added) (quoting *Ferguson*, 217 F.3d at 985).

> So long as a defendant knows the risks associated with self-representation, it is irrelevant for constitutional purposes whether his understanding comes from a colloquy with the trial court, a conversation with his counsel, or his

17

own research or experience. The core inquiry is whether the defendant understood the choices before him and the potential dangers of proceeding *pro se*. If so, his waiver is valid.

***Jones***, 540 F.3d at 1293.

## Discussion

## Point I

Because Lavender did not assert that his waiver of counsel was erroneously inadequate in his motion for new trial, the point on appeal is subject only to our discretionary plain error review. Lavender raises two distinct issues in his first point on appeal.[5] First, the trial court erred in failing to obtain a written waiver of counsel in violation of § 600.051. Second, the trial court failed to conduct an adequate hearing under ***Faretta***.

### Written Waiver

Lavender did not complete a written waiver of his right to counsel, nor did the trial court attempt to procure one from him. Under ***Hunter***, however, no written waiver is required when a defendant has "standby" or "hybrid" counsel because the defendant "has the aid and assistance of an attorney and has not actually waived counsel." 840 S.W.2d at 860. Lavender was provided standby counsel who appeared and participated at trial and sentencing. Therefore, pursuant to ***Hunter***, no written waiver was required. Thus, the failure to obtain the written waiver was not plain error.

### *Faretta* Hearing

The trial court addressed Lavender's desire to proceed *pro se* three times on the

---

[5] We note that this multifarious point potentially violates Rule 84.04(d). However, we will exercise our discretion to review the issues because "the argument is readily ascertainable and does not require us to become an advocate for one party." ***Dieckmann v. JH Constr. 2, LLC***, 619 S.W.3d 513, 522 (Mo.App. 2021).

record. At the first hearing, Lavender asserted his right to represent himself. The trial court informed Lavender that it could grant him leave to represent himself, but only if the court determined Lavender was competent to do so. The judge told Lavender that he faced serious charges with potential sentences of life imprisonment and that the judge was concerned Lavender would not be able to effectively represent himself. The judge informed Lavender of his statutory right to counsel. Based on Lavender's statements to the court, many of which were not relevant to the charges against him and were a hodgepodge of conspiratorial rhetoric and obfuscating gibberish, the court denied his request to proceed *pro se* and denied counsel's motion to withdraw.

At the second pretrial hearing, the trial court, citing ***Black***, conducted a second inquiry into Lavender's ability to represent himself. 223 S.W.3d 149. Lavender informed the court that he completed high school and could read and write in English. The judge noted that Lavender previously had appeared before him, and asked whether Lavender had appeared in other courts. Lavender stated that he had appeared in front of Judge Hickle and had "a pretty good idea" about court processes. Lavender stated he understood that if he proceeded *pro se,* he would be required to call and question witnesses and to object to improper questions by the State. He stated that he understood that his failure to object would mean the answers would come before the jury. He acknowledged that he would be responsible for conducting his own voir dire and delivering his own opening statement and closing argument. He stated he understood that if he did not have counsel he would be required to perform all these aspects of the trial himself.

The judge further asked Lavender whether anyone had threatened or encouraged him to proceed without a lawyer. Lavender acknowledged the choice was his alone.

19

Lavender agreed to the public defender as standby counsel. He stated, "I'm prepared [to go forward with trial]. I am prepared to act as a *pro se* litigant." The trial judge then found that Lavender was competent to represent himself, that he was doing so "of his own volition and not under any duress or coercion."

The court went on to discuss pretrial issues. Lavender cogently participated in a discussion of issues regarding witness testimony. He then made an argument regarding the invalidity of statutes due to the purported absence of enacting clauses. In responding to those arguments, the trial judge stated the counts charged against Lavender and their corresponding statutes. Additional evidentiary arguments were made by the prosecution. Lavender participated in these discussions and made relevant comments.

On the first day of trial, before voir dire, the trial judge took up the question of Lavender's self-representation because the public defender again asked for leave to withdraw as counsel. The court denied her request to withdraw and ordered her to appear as standby counsel. The trial judge also reiterated the seriousness of the charges and inquired of Lavender, "[d]o you understand -- the gravity of these charges, that the assault first carries a range of punishment of up to life in prison?" Lavender stated that he understood. The court again went through each count and the potential sentences associated therewith.

Although not conducted as a single *Faretta* hearing, the three discussions that occurred between the trial judge and Lavender prior to trial were sufficient to demonstrate Lavender's knowing and voluntary waiver of counsel. The court touched on the categories of discussion set forth in ***Black***, including the nature of the charges, the possible penalties that could be imposed, the trial court proceedings, and the responsibilities Lavender would take on at trial as a *pro se* defendant. 223 S.W.3d at 154.

20

The trial judge determined that Lavender graduated high school, could read and write the English language, had been in criminal court previously, and was not coerced into waiving counsel. Lavender desired to proceed *pro se* and expressed this desire multiple times in the three hearings. A review of the entire record demonstrates that Lavender knowingly and intelligently waived his right to counsel.

As in **Teter**, Lavender's positive performance at trial stands as circumstantial evidence that Lavender was competent to waive the right to counsel. His objections at trial were appropriate. He successfully cross-examined witnesses. He drew up his own written questions of the child witnesses and the court allowed his standby counsel to ask those questions. He introduced documents into evidence. He made pertinent and appropriate motions. He made both opening and closing statements.

We acknowledge that the trial court did not discuss in detail every point listed in **Black** and **Teter**. The trial court failed to inform Lavender that recommendations by a prosecuting attorney would not be binding on the judge, that it was generally a bad idea to proceed without counsel, and of the specific elements of and defenses to the crimes charged.[6] Missouri courts have held, however, that such omissions are not sufficient to demonstrate inadequate waiver. In **State v. Fritz**, we rejected a defendant's argument that his waiver of counsel was inadequate because the trial judge failed to inform him of potential defenses. 480 S.W. 3d 316, 325 (Mo.App. 2016) (citing **State v. Garth**, 352 S.W.3d 644, 653-54 (Mo.App. 2011)). Similarly, in **State v. Jenkins**, 304 S.W.3d 777, 783-84 (Mo.App. 2010), we determined that a defendant waived counsel knowingly and intelligently despite the trial court's failure to inform him that he could not later claim he

---

[6] Lavender put forward a self-defense theory even without the trial court informing him that such a theory was available.

received ineffective assistance of counsel.

Finally, Lavender argues on appeal that his consistent references to his status as a sovereign citizen, jurisdictional arguments related thereto, and statements in this vein to the jury demonstrate that Lavender was not capable of knowingly and voluntarily waiving his right to counsel. Lavender is not the first defendant to press various "citizenship" theories designed to test the court's jurisdiction. Other courts have found knowing and voluntary waiver of the right to counsel even for defendants who have argued similar theories. *See Ndon*, 583 S.W.3d at 154-55; *State v. Davis*, 507 S.W.3d 41, 44-45 (Mo.App. 2016). Although Lavender made statements regarding these theories, he continued to answer the questions of the judge during the *Faretta* colloquies, and those theories were not his primary defenses to the charges against him. The "sovereign citizen" theories did not prevent the trial from proceeding, in contrast to both *Ndon* and *Davis*.

We are persuaded by the Supreme Court of Missouri's guidance that "the ultimate focus of inquiry" is to "the fundamental fairness of the proceeding whose result is being challenged." *Teter*, 665 S.W.3d at 315 (quoting *Ferguson*, 217 F.3d at 985). Accordingly, based on the three hearings at which the trial court discussed with Lavender his right to counsel, his correlative right to proceed without counsel, the pitfalls of acting *pro se*, the seriousness of the charges he faced, and the duties he would be required to perform with only standby counsel, we find that the trial court's *Faretta* inquiries did not result in plain error. Noting the warnings of the trial judge in those hearings combined with Lavender's prior experience in criminal court and his ultimately satisfactory performance in representing himself, we find no plain error in the trial court's finding that the waiver of counsel was knowing and voluntary, nor do we find manifest injustice or a miscarriage of justice under our plain error review. Point I is denied.

**Point II**

In his second point, Lavender claims it was error for the trial court to deny his motion for a new trial because an exonerating witness never received a subpoena and did not appear at trial. "[A]n accused has a right to compulsory process to compel the attendance of witnesses in his behalf." *State v. Lewis*, 735 S.W.2d 183, 188 (Mo.App. 1987).

Lavender raised this point only in his motion for new trial, but not at the trial itself. As such, the claim is entitled only to plain error review, which is at the court's discretion. As in *Lewis*, there is nothing in the record to indicate that Lavender ever asked the trial court for a subpoena for the eyewitness. Lavender's failure to raise the issue until after the verdict coupled with the lack of anything in the record that would indicate a request was ever made ultimately dooms his claim. *Lewis*, 735 S.W.2d at 188. Point II is also denied. Accordingly, the judgment of the trial court is affirmed.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS